### SWEENEY v. FARMERS' RICE MILLING & STORAGE CO.

(Court of Civil Appeals of Texas. San Antonio. May 17, 1911.)

1. CHATTEL MORTGAGES (§ 278*)—ACTION TO FORECLOSE—EVIDENCE—SUFFICIENCY.

Evidence in an action to foreclose a chattel mortgage *held* insufficient to sustain a judgment and decree of foreclosure.

[Ed. Note.—For other cases, see Chattel Mortgages, Dec. Dig. § 278.*]

2. ASSIGNMENTS (§ 48*)—EQUITABLE ASSIGNMENT—AGREEMENT TO PAY.

A tenant mortgaged his crop of rice for advances made and to be made, and, when the crop was grown, removed it from the premises, and delivered it to the mortgagee, and the landlord then asserted a landlord's lien against the mortgagee, and, in order to make a sale of the rice, the mortgagee promised the landlord that he would pay the amount of the lien, and the landlord agreed to look to the mortgagee for payment of the tenant's indebtedness, although the tenant was not a party to the agreement and did not ratify or acquiesce in it. *Held,* that the agreement amounted to an equitable assignment to the mortgagee of the rents due to the landlord.

[Ed. Note.—For other cases, see Assignments, Dec. Dig. § 48.*]

3. CHATTEL MORTGAGES (§ 114*)—CONSTRUCTION—DEBTS AND LIABILITIES SECURED.

A mortgage for advances to a tenant to enable him to grow and market a crop of rice on certain premises, and for the making of future advances as needed and as warranted by crop conditions, does not cover an equitable assignment of a landlord's lien made to the mortgagee, so that such assigned lien can be enforced by action to foreclose after the mortgagor has repaid to the mortgagee all money due from him for advances under the mortgage.

[Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. § 191; Dec. Dig. § 114.*]

4. SUBROGATION (§ 28*)—PERSONS MAKING ADVANCES FOR DISCHARGE OF DEBT OR INCUMBRANCES.

The mortgagee in a chattel mortgage for advances made and to be made to the mortgagor to grow and market a crop of rice received possession of the crop when grown, and upon the assertion of a lien by a prior mortgagee who had made advances to the mortgagor for the same purposes, promised such prior mortgagee to pay the amount of its claim, and the prior mortgagee agreed to look to the mortgagee in possession for payment thereof. *Held,* that the mortgagee in possession was subrogated to the rights of the prior mortgagee.

[Ed. Note.—For other cases, see Subrogation, Cent. Dig. §§ 51–59; Dec. Dig. § 28.*]

5. CHATTEL MORTGAGES (§ 114*)—CONSTRUCTION—DEBTS AND LIABILITIES SECURED.

A chattel mortgage to secure advances to a tenant to enable him to grow and market a crop of rice on certain premises, and for the making of future advances as needed and as

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

warranted by crop conditions, does not cover the lien of a prior mortgagor who had made advances for the same purpose and to which the second mortgagee had been subrogated, so that such subrogated lien can be enforced by action to foreclose after the mortgagor has repaid the second mortgagee all money due from him for advances under the mortgage.

[Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. § 191; Dec. Dig. § 114.*]

6. SEQUESTRATION (§ 21*)—WRONGFUL SEQUESTRATION—DAMAGES.

Where a writ of sequestration is wrongfully sued out in aid of the foreclosure of a chattel mortgage, and the mortgaged property is seized thereunder, the mortgagee is liable to the mortgagor in damages.

[Ed. Note.—For other cases, see Sequestration, Cent. Dig. §§ 50–54; Dec. Dig. § 21.*]

7. APPEAL AND ERROR (§ 1152*)—MODIFICATION.

A judgment on a trial of issues will be reformed on appeal to conform to the facts and evidence.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4483–4496; Dec. Dig. § 1152.*]

Appeal from District Court, Matagorda County; Wells Thompson, Judge.

Action by the Farmers' Rice Milling & Storage Company against C. H. Sweeney to foreclose a chattel mortgage, in aid of which plaintiff sued out a writ of sequestration, and in which defendant filed a plea in reconvention for damages from the alleged wrongful writ of sequestration, and in which R. F. Faickney and J. P. Blackwell, copartners under the firm name of Faickney & Blackwell, intervened, alleging defendant's indebtedness to them, and claiming a mortgage lien on part of the property covered by plaintiff's writ of sequestration. Defendant's motion to quash plaintiff's application and bond for the writ of sequestration was overruled, and there was a judgment for plaintiff, with a decree for foreclosure of the mortgage, and judgment for interveners with a decree for the foreclosure of their mortgage, subject to plaintiff's superior lien, and defendant appeals. Judgment for plaintiff affirmed in part, in so far as it was a personal judgment, and in part reformed and reversed, and judgment for interveners decreed to be a first lien between the parties to the suit and affirmed, and cause remanded for determination of defendant's damages from the wrongful suing out of the writ of sequestration.

Carpenter & Wilson, for appellant. Gaines & Corbett, for appellee.

NEILL, J. In its first amended original petition, the Farmers' Rice Milling & Storage Company, who was plaintiff below, alleged, substantially: That on February 10, 1909, C. H. Sweeney, defendant below, executed and delivered to it his promissory note for $1,000 advanced to him by plaintiff to enable him to grow a crop of rice on about 300 acres of land situated one mile from Van Vleck, Matagorda county, the land, 175 acres owned by J. H. Hopper and others, and 125 acres owned by Mrs. India Mason. That to secure the payment of the sum of money and such other advances as plaintiff might be required to make to defendant to aid him in planting, growing, and harvesting a crop of rice on said land, the defendant did, on February 10, 1909, execute and deliver to plaintiff his certain chattel mortgage. That at the time said mortgage was given it was contemplated by plaintiff and defendant that further sums of money should be from time to time advanced if necessary, and that plaintiff was to see to the advancing of said sums when necessary, and that all sums advanced for making and harvesting said crop, or to protect plaintiff in its said security, were to be secured by said chattel mortgage. That said mortgage expressly provided that, in event suit was brought or it became necessary to litigate the rights of the parties under said mortgage, an attorney's fee of 10 per cent. upon all sums involved should be paid plaintiff as attorney's fees, and that the sum of 10 per cent. was a just and reasonable compensation for the services of an attorney. That on January 7, 1909, defendant executed and delivered to Le Tulle Mercantile Company his certain promissory note for $91, bearing interest at the rate of 10 per cent. per annum from date, which provided for 10 per cent. attorney's fees if placed in the hands of an attorney for collection. That said note was secured by a chattel mortgage upon 50 sacks of rice of 180 pounds each, No. 1 in quality, to be delivered by defendant to Le Tulle Mercantile Company at Bay City, Tex., and was duly registered with the county clerk of Matagorda county, Tex., on January 8, 1909, thus creating a lien upon 50 sacks of rice to be grown, which was subsequently hypothecated to plaintiff. That, in order to protect itself against loss on account of said mortgage, it was necessary for plaintiff to pay off, satisfy, and discharge the same, which it was authorized to do as a further and additional advance to the defendant; that, by reason of such payment and the necessity therefor, plaintiff was subrogated to the rights of Le Tulle Mercantile Company under its mortgages, and that said note is also secured by the terms of said mortgage executed by defendant to plaintiff. That defendant entered into a contract with Mrs. India Mason, by the terms of which he leased from her or Dr. J. W. Brown, her father, now deceased, a certain tract of land, lying and being situated in Matagorda county, Tex., and agreed to pay therefor a cash rental amounting to $552. That said rental was a first lien upon all the crop grown upon said land. That after the rice was harvested by defendant, immediately upon its being placed with plaintiff under the terms of the mortgage, plaintiff was notified by Mrs. India Mason of the existence of her landlord's lien upon said

crop, and that afterwards, on October 7, 1909, plaintiff offered the rice for sale and it was purchased by the Colorado Valley Rice Milling Company. That immediately thereafter notice was served by Mrs. Mason on said purchaser of her claim for rents due and her lien on the rice therefor. That then the said purchaser declined to pay for the rice or handle the same until her claim thereon was adjusted. That, then, plaintiff, acting within the scope of its authority, granted it under its contract with defendant, in order to protect its said security, and, in furtherance of the interest of defendant, promised, obligated, and bound itself to pay or cause to be paid to India Mason her said rental of $552, as well as the further sum of $60 for the hire of three mules which defendant had hired from her. That plaintiff bound itself to pay said sum of money to Mrs. Mason, or her attorneys, as a means of procuring possession of the balance of the money due on said rice and to enable it to consummate the sale of the rice, and that she thereupon agreed to accept said sum of money from plaintiff and permitted the sale of the rice to be consummated, all of which was acquiesced in by the defendant. That the mules for the hire of which the $60 were due by defendant to Mrs. Mason were used by defendant in growing said rice, and a landlord's lien existed on said crop in her favor for said sum of money, wherefore plaintiff was compelled to become responsible for the payment of the same, as before alleged, and that it was necessary for plaintiff to pay off and satisfy said several claims in order to protect itself and its securities and consummate said sale, as before stated. That said several sums were a lien on said crop, and plaintiff was bound and compelled to pay off, satisfy, and discharge said lien in order to protect itself, as before alleged. That all of said sums were paid for the use and benefit of the defendant, and as an advancement under the terms of its mortgage referred to, and that defendant received the direct benefit thereof and acquiesced therein. That, by reason of the payment of said sums and discharge of the various liens by which they were secured, plaintiff was subrogated to said liens, as well as entitled to a foreclosure of its mortgage lien on the property described therein. That "the property described in said chattel mortgage, and upon which plaintiff has an express lien to secure it in the repayment of said sums, together with attorney's fees thereon, and interest at the rate of 10 per cent. per annum from January 7, 1909, to date of payment, on $91, and from November 1, 1909, on said sum of $612, is described as follows." Here follows a description of ten mules, two horses, and certain agricultural implements and machinery. That it has become necessary to employ counsel to bring this suit, and enforce collection of plaintiff's debt, and that it has employed for such purposes a certain firm of lawyers and has promised and agreed to pay the firm for its services the 10 per cent. provided by said contract, and that such sum is a reasonable fee for such services.

The petition closes with a prayer for a judgment against defendant for the sum of $552 advanced to pay the land rent and $60 advanced to pay hire of teams to India Mason, together with interest thereon from November 1, 1909, at the rate of 10 per cent. per annum; and for the sum of $91 advanced to pay the debt of Le Tulle Mercantile Company, together with interest thereon from January 7, 1909, at the rate of 10 per cent. per annum, and for 10 per cent. attorney's fees upon all of said sums, and for the establishment and foreclosure of its lien on all the property before described, for an order of sale directing the sale of said property, etc.

At the time, November 16, 1909, plaintiff's original petition was filed, a writ of sequestration was sued out and levied upon the property described in plaintiff's mortgage. The answer of defendant contains a general demurrer and the following special exceptions to that part of plaintiff's petition which alleges payment to Le Tulle Mercantile Company and to Mrs. India Mason, because (1) it does not allege that the payment was made at the request of defendant, nor with his consent, procurement, or acquiescence; (2) it fails to state any fact or facts showing why it was compelled to pay the debt of defendant to third parties; (3) it does not allege such payments were made nor the amount thereof; and (4) to that part of the petition which asks for 10 per cent. interest and 10 per cent. attorney's fees, for the reason that under the doctrine of subrogation it could only recover the amount paid, with legal interest from the time of payment. These exceptions are followed by pleas which are in substance as follows: (1) A general denial; (2) That, if plaintiff ever made payment to Le Tulle Mercantile Company, the same was made without any legal obligation on the part of plaintiff so to do and without any request from defendant and without his acquiscence, and that, if any such payment was made, it was entirely voluntary on plaintiff's part and defendant is not liable therefor; and (3) that, if plaintiff ever paid any money to Mrs. India Mason, it was made without defendant's knowledge, consent, procurement, or acquiescence, when there was no obligation or liability on its part so to do, and, if made at all, said payment was made at a time when there was no lien existing in her favor upon or against the rice crop grown upon her land, for the reason that at the time of such payment, if any was ever made, the rice had been removed from the premises upon which it was grown for more than thirty days and was not moved with the consent of Mrs. Mason for the purpose of being prepared for market, and hence the landlord's lien had expired and ceased to exist at the time of the alleged payment, and plaintiff was under no legal obligation to pay the same. The an-

swer also contains a plea in reconvention against plaintiff, which is, in substance: That plaintiff, acting through its general manager, A. A. Moore, on November 16, 1909, filed an affidavit in this case for a writ of sequestration to be issued and levied upon defendant's property therein described, alleging and declaring that plaintiff had a valid and subsisting mortgage upon the property described therein, and that "he, the said A. A. Moore, fears that said C. H. Sweeney, defendant, will injure said property during the pending of this suit," and at the same time filed its bond for sequestration, in this cause in the sum of $4,200, with V. L. Le Tulle and M. S. Perry as sureties thereon, conditioned that said plaintiff would pay this defendant all damages that might be awarded against it (said plaintiff) and all costs in case it should be decided that the writ of sequestration was wrongfully issued, which bond was duly approved by the clerk and on file with the papers in this cause, and a writ of sequestration was then duly issued. By reason of all of which plaintiff and V. L. Le Tulle and M. S. Perry promised and became legally bound to pay defendant all damages he should sustain in case said writ of sequestration was wrongfully issued. That "the writ of sequestration was issued on the date last aforesaid and placed in the hands of the sheriff of Matagorda county, Tex., who on November 18 and 19, 1909, by virtue thereof, seized and took from the possession of defendant and still withholds from him the following described property, to wit: [Here follows a description of the property, which is the same as that contained in plaintiff's petition]. Which property was and is of the reasonable value of $2,500." That at the date of filing its application and bond for sequestration and the issuance and service of said writ plaintiff did not have, nor does it now have, any mortgage upon or against the property described in said application for the writ of sequestration, for that on or about the —— day of November, 1909, and prior to the filing of plaintiff's petition, the defendant paid plaintiff his entire indebtedness to it in cash, and it then and there surrendered to defendant all evidence of his indebtedness, and that said mortgage mentioned in plaintiff's petition was then and there fully paid off, satisfied, and discharged, and that no subsequent act of plaintiff could revive the same. That the statements contained in said affidavit for sequestration, which is on file herein, are as follows: "That he, the said A. A. Moore, fears that said C. H. Sweeney, defendant, will injure said property during the pendency of this suit; that said mortgage is a valid and subsisting lien on said property above described, and is still in existence; that the same is just and unsatisfied, and the amount of the same still unsatisfied is $783.20, which is due on the first day of November, A. D. 1909; that plaintiff, Farmers' Rice Milling & Storage Company, is the legal owner and

holder of said debt and mortgage so sought to be foreclosed," upon which it claims said writ of sequestration is based, is and was wholly untrue, that it was made wrongfully, maliciously and wantonly, and with the intent to injure defendant in its business and destroy his credit, good name, and reputation. That there existed no reasonable or probable cause or excuse of any kind therefor, and that plaintiff or its manager, A. A. Moore, so knew at the time of making said affidavit and issuance of said writ of sequestration. That, by reason of the unlawful seizure of his property as aforesaid, plaintiff and its said sureties on said sequestration bond became liable, undertook, and promised to pay defendant the reasonable value of said property so seized, to wit, the sum of $2,500. That to pay the same or any part thereof they have wholly failed and refused, to defendant's actual damage in the sum of $2,500. That the reasonable value of the use of said property so seized and withheld from defendant is and was of the sum of $10 per day for each and every day which he has been deprived of said property. That he has been deprived of the same for more than 50 days, by reason whereof plaintiff and the said V. L. Le Tulle and M. S. Perry became liable and undertook to pay defendant the further sum of $500 damages. That defendant was a rice farmer, and used said property in planting, cultivating, and harvesting rice, and that it was all he owned. That by seizing and taking same from his possession under said writ of sequestration he was forced to abandon said pursuit and go to work by the day for wages, and has been thereby damaged in his reputation and injured in his credit in the further sum of $1,500 actual damages. The plea in reconvention also contains a count against the plaintiff for $5,000 exemplary damages for wrongfully and maliciously suing out the writ of sequestration.

R. F. Faickney and J. P. Blackwell, partners under the firm name of Faickney & Blackwell, intervened in the suit, claiming that the defendant, Sweeney, was indebted to them in the sum of $500 secured by a mortgage lien on some of the property upon which plaintiff had sequestered. A motion was filed by defendant to quash plaintiff's affidavit and bond for the writ of sequestration. A jury being waived, the case was tried before the court on January 12, 1910, and all defendant's exceptions to plaintiff's petition were overruled, as well as exceptions of plaintiff to defendant's answer, as was also defendant's motion to quash plaintiff's application and bond for the writ of sequestration. Whereupon, as between all the parties, plaintiff, defendant, and interveners, the case was tried upon its merits, and the court, after hearing the evidence, reached the conclusion that the law and facts were with the plaintiff, ordered, adjudged, and decreed that the plaintiff, Farmers' Rice Milling & Storage Company, have and recover from the defend-

ant, C. H. Sweeney, the sum of $81, together with interest thereon from January 7, 1909, at the rate of 10 per cent. per annum, reciting that it is the amount due by defendant to Le Tulle Mercantile Company and assumed by the plaintiff for which it is bound; and, further, that plaintiff recover of and from the defendant the sum of $612, together with interest at the rate of 10 per cent. per annum from January 1, 1910, together with 10 per cent. on all of said amounts as attorney's fees and costs. It also decreed a foreclosure of the plaintiff's mortgage on the property described in plaintiff's petition and ordered it sold to satisfy said judgment. Judgment was also entered in favor of the interveners, Faickney & Blackwell, against the defendant, Sweeney, for the sum of $500, with interest thereon at the rate of 10 per cent. per annum from November 13, 1909, and 10 per cent. attorney's fees on both principal and interest, together with a foreclosure of the mortgage on the property described in intervener's petition, made by defendant to secure said indebtedness; but it was decreed that said mortgage was subsequent and inferior to plaintiff's lien, and that its foreclosure was subject to that of plaintiff's superior lien.

From the judgments against him, both in favor of plaintiff and interveners, the defendant, Sweeney, has appealed. However, no errors appear to have been assigned as to the judgment and decree in favor of the intervener.

There are a number of errors assigned against the judgment and decree in favor of the Farmers' Rice Milling & Storage Company; but, as we shall reverse the judgment, in our view of the case, it will not be necessary to give all of them special consideration.

It may be that plaintiff's first amended original petition is good against all the special exceptions taken by the defendant to the original, and we are inclined to think it is, except, possibly, the third and fourth.

[1] But it may be conceded that plaintiff's first amended original petition is good against any of the exceptions urged against it, so that we may come at once to the consideration of the question whether the evidence supports the judgment and decree of foreclosure. It will be noticed that the indebtedness for which the judgment and decree were rendered was not primarily due from defendant Sweeney to the Farmers' Rice Milling & Storage Company, but that it arose from contracts between the defendant and other parties, with which plaintiff was not connected nor anywise in privity. This is not only shown by the allegations in plaintiff's pleadings, but by the uncontroverted evidence. The plaintiff, however, seeks to cover and make the indebtedness due him under and by virtue of its mortgage contract with the defendant. While it may, under the equitable doctrine of subrogation, be entitled to recover such indebtedness from the defendant, yet it is not entitled to a fore-closure of said mortgage, unless it show such debts were under the terms of said instrument secured by it. In the mortgage contract, the plaintiff is designated as the party of the first part and the defendant as the party of the second part, and, after such designation, is substantially as follows:

"(1) The party of the second part, for and in consideration of one thousand ($1,000) dollars, advanced to him by party of the first part, the receipt of which is hereby acknowledged, hereby contracts, agrees, and binds himself to deliver to the party of the first part, at its warehouse in Bay City, Texas, one thousand (1,000) sacks of rice, each of good quality; each to weigh not less than 162 pounds, raised and grown, or to be raised and grown this year upon the premises hereinafter described, which said rice is to be delivered as rapidly and promptly as possible after same is threshed. The advancement of the aforesaid sum of money is evidenced by the promissory note of the party of the second part, payable to the order of the party of the first part at Bay City, Texas, for the sum aforesaid, dated 10th day of February, 1909, due on the 1st day of October, 1909, bearing 10 per cent. interest from date and containing the usual attorney's fees clause of 10 per cent.

"(2) It is further understood and agreed between the parties hereto that further advancement will be made by party of the first part to party of the second part during this year, if market and condition of crop justifies such further advancements, of which party of the first part is sole judge. Such future advances, if any be made, are to be evidenced by the promissory note or notes of the party of the second part, payable to the order of the party of the first part, at Bay City, Texas, to bear 10 per cent. interest from the date agreed upon, to contain the usual attorney's fees clause, and to bear date of the date of execution, and to be payable as may be agreed upon when the advancements are made.

"(3) The sum of money advanced as aforesaid, and the sum or sums which may be hereafter advanced, as above provided, are for the purpose of enabling party of the second part to plant, grow, mature, harvest and market a crop of rice to be grown, growing or grown this year on the premises hereinafter described, and it is understood that said advancements are made and received in good faith for such purposes and no other, and without the same party of the second part would not be able to make and market said crop of rice.

"(4) It is agreed and understood that said rice is to be stored in the warehouse of party of first part at Bay City, Texas, for which it is to receive as compensation for said storage 6 cents for each sack of rice for the first month or fraction thereof. For each sack thereof (which) may be stored with party of

the first part for more than 1 month, it is to receive an additional compensation of 4 cents for each additional month or fraction thereof. When the tops of a lot of rice only is sold, one cent additional storage charges shall be made on all rejections.

"(5) Party of the second part hereby appoints party of the first part his agent to dispose of said rice, after it is stored with it, and it is authorized to sell and dispose of same to the best advantage it can. As compensation for making such sale, it is to receive 5 cents for each sack, which compensation it is to receive whether the sale of said rice is made by it or party of the second part, or by whomsoever made. The proceeds of such sale, party of the first part shall apply: First, to the payment of all storage charges due it on rice; second, to the payment of the commission due on such sale; third, to the payment of the advancements made by it during this year, as aforesaid, as the interest of party of the first part may appear, with interest as provided in said notes; fourth, the balance pay to C. H. Sweeney or his order.

"(6) For each sack, if any, of said rice that party of the second part fails to deliver to party of the first part, as provided in the first paragraph hereof, party of the second part hereby promises and agrees to pay party of the first part the sum of 10 cents.

"(7) In order to secure party of the first part, in the payment of the sum of money advanced as stated in the first paragraph hereof, according to the tenor and effect of the note given therefor, with interest and attorney's fees as therein provided, and also to secure the payment of the additional advances, if any, which may be made by the party of the first part, according to the tenor and effect of the notes to be given therefor, with interest and attorney's fees as provided in said notes, and to guarantee the performance of the contract and agreement to deliver to party of the first part said 1,000 sacks of rice as aforesaid, and guarantee and secure the payment of the said sum of 10 cents per sack for each sack that party of the second part fails to so deliver as provided in the sixth paragraph hereof, part— of the second part do— hereby bargain, sell, transfer, pledge, hypothecate, deliver and mortgage unto the party of the first part his entire crop of rice, grown, growing, or to be grown, during the year 1909 by himself on certain premises in Matagorda County, Texas, containing about 300 acres, situated about 1 mile from Van Vleck in a Northeasterly direction therefrom land owned 175 acres by J. W. Hopper et al. and 125 by Mrs. India Mason, situated Hardeman Sough, and watered by private plant of C. H. Sweeney. Also the following described property, to wit." Here follows a description of the property such as is set out in plaintiff's petition.

From this instrument it is apparent that, in order to bring the indebtedness sued on within its terms and secure its payment by the mortgage and entitle plaintiff to a 10 per cent. attorney's fee thereon, it must be shown by the evidence to be a sum or sums of money advanced by the plaintiff to the defendant for the purpose of enabling him to plant, grow, mature, harvest, and market a crop of rice, grown during the year 1909 on the premises described in said contract or agreement, or at least for some one of the enumerated purposes. It is conclusively shown by the evidence that none of the money sued for was ever advanced by plaintiff to the defendant for any purpose whatever. With the same conclusiveness it is shown that no part of it was paid by plaintiff to either Mrs. India Mason or Le Tulle Mercantile Company, either when this suit was instituted or when the judgment appealed from was rendered. It is true it is shown by the evidence that before the judgment was rendered, while the rice grown on the premises was in plaintiff's possession, Mrs. Mason and Le Tulle Mercantile Company asserted their superior liens on such crop for the amounts due them respectively by the defendant, and that the plaintiff, in order to consummate a sale of the rice promised and agreed with each of said parties to pay such debt, respectively, claimed as a lien on such property, and that each agreed to allow plaintiff to consummate the sale and look to him for the payment of their respective demands of indebtedness against the defendant. It is equally manifest from the evidence that defendant was not a party to such agreement and that he never in any way ratified or acquiesced in it. It is further apparent from the undisputed evidence that, before this suit was instituted, the defendant had paid plaintiff every cent he was due it for money advanced under said contract and covered by the mortgage.

In reaching out for money, there can, with some persons, both natural and artificial, be some powerful stretching, but courts cannot permit their reach to extend beyond the law. Here a contract, which embodies the entire agreement between the parties, where no fraud nor mistake is claimed, which possesses no elasticity, but which in itself is as firm and unyielding as cast iron, has, by judicial construction, been stretched to such an extent as to make it cover and give security for debts incurred by one of the parties thereto through his contract with others to which the other party was wholly a stranger. This is stretching things too far.

[2] The only right of action the plaintiff had to recover of defendant upon the indebtedness sued upon arose either from the doctrine of subrogation, or from an equitable assignment by India Mason and Le Tulle Mercantile Company of their respective demands against the defendant to the plaintiff.

It is contended by the defendant that Mrs. Mason had lost her landlord's lien on the crop of rice raised on her premises by the de-

fendant, and that the doctrine of subrogation cannot, therefore, apply to the debt defendant owed her for rent of her land.

[3] There is some doubt arising from the evidence as to the correctness of this contention, but as it is indubitably shown by the evidence that plaintiff, under the undisputed facts, has an equitable assignment of India Mason's claim against defendant for rents due her it is unnecessary for us to go into the question of subrogation; for as such indebtedness was not covered by the mortgage contract, and the only property upon which Mrs. Mason had a landlord's lien has been disposed of by plaintiff, the equitable assignment of her debt to plaintiff is as effective as its subrogation to the claim could be.

[4] The same may be said as to defendant's indebtedness to Le Tulle Mercantile Company, but as to it plaintiff's subrogation to the rights of the mercantile company is clear, both as to the note for $91, the security given for its payment, the 10 per cent. interest and 10 per cent. attorney's fees.

[5] But as the mortgage was on a part of the rice crop, which has been disposed of by plaintiff, and the indebtedness is not covered by the mortgage contract between plaintiff and defendant, there is nothing to foreclose. The contract of lease above referred to provides that the money for rent shall bear interest at the rate of 8 per cent. per annum from the date it should have been paid, but it makes no provision for the payment of attorney's fees. The rent, which plaintiff assumed the payment of, according to plaintiff's allegations, became due on January 1, 1910.

[6] Inasmuch as the mortgage contract did not comprehend the indebtedness sued on, and its foreclosure for the purpose of discharging said indebtedness was unauthorized, it necessarily follows that the writ of sequestration was wrongfully sued out. Hence it is unnecessary for us at this stage of the proceedings to pass upon the question as to whether the court erred in overruling defendant's motion to quash the sequestration proceedings. Since this case was fully developed upon the trial upon every question of fact save the amount of damages the defendant Sweeney is entitled to recover by reason of the wrongful suing out of the writ of sequestration, and the seizure of defendant's property thereon, it becomes our duty to reform the judgment as to every thing else in accordance with the facts shown and views expressed in this opinion.

[7] Therefore that part of the judgment which is on the Le Tulle Mercantile Company's claim assumed by the defendant will, in so far as it is a personal judgment, be undisturbed and affirmed; that part of the judgment on the India Mason claim for rent assumed by plaintiff for $612, will be so re-formed as to make said sum bear interest at the rate of 8 per cent., instead of 10 per cent. as rendered, from January, 1910, and that the 10 per cent. adjudged for attorney's fees on said amount be set aside, and no attorney's fees be allowed; that decree foreclosing plaintiff's alleged mortgage lien on the property described in plaintiff's petition be, and the same is hereby, in all things reversed, annulled, set aside, and held for naught; that the judgment of interveners against defendant Sweeney be, both as to the amount recovered and the foreclosure of their mortgage security on the property described in the mortgage of defendant to them, and is hereby affirmed, it being here decreed the first and only lien, as between the parties to this suit, on said property; and that the cause, as to defendant's cross-action or plea in reconvention for damages, be remanded to the trial court for the purpose of determining what damages the defendant Sweeney has sustained by reason of plaintiff's wrongful suing out of the writ of sequestration and the seizure of his property thereunder.

Affirmed in part, reversed in part, reformed in part, and remanded in part.